**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**MAE DEAN ANDERSON**                                                                   **PLAINTIFF**

**v.**                                              **5:06CV00225-WRW**

**WAL-MART STORES, INC.**                                                              **DEFENDANT**

**ORDER**

Pending is Defendant's Motion for Summary Judgment (Doc. No. 32). Plaintiff has responded (Doc. No. 40), and Defendant has replied (Doc. No. 45). For the reasons set out below, Defendant's Motion is GRANTED.

**I.   SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[1]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[2]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[3]  Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[4]  I must view the facts in the light most

---

[1] *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[3] *Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[4] *Id.* at 728.

favorable to the party opposing the motion.[5] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[6]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[7]

## II.   BACKGROUND

On October 26, 1995, Wal-Mart, Inc. hired Plaintiff, an African-American female, as a stocker in Store 241 in Pine Bluff, Arkansas.[8] In January, 2004, Wal-Mart's Pine Bluff stores 241 and 928 merged into Wal-Mart Supercenter Store 3331 ("Supercenter").[9] Plaintiff worked at the Supercenter until March 29, 2004, when Wal-Mart terminated her employment.[10]

Plaintiff held various positions while she was employed by Wal-Mart.[11] As of 1998, Plaintiff worked as a Fitting Room Associate and her main duty was answering the phones.[12]

---

[5]*Id.* at 727-28.

[6]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[7]*Anderson*, 477 U.S. at 248.

[8]Doc. Nos. 34, 38.

[9]*Id*.

[10]*Id*.

[11]*Id*.

[12]*Id*. A Fitting Room Associate is a type of Sales Floor Associate. A Sales Floor Associate's main duties include: providing customer service; maintaining loss prevention

Plaintiff's Fitting Room Associate job description required her to: practice a 10 Foot Attitude; answer the phone by the second ring and ensure customer calls are directed properly; hang up returned apparel merchandise; help customers find what they need; provide proper/professional use of the radio pager; assist softline associates with merchandise; ensure fitting rooms are neat and clean; follow safety and emergency procedures; re-check and count garments as customers leave the fitting room; give "dress checks" to all customers entering the fitting room; remove and account for hangers and tags after the customer leaves the dressing room; make security calls every thirty minutes or as requested by management.[13] When Plaintiff did not have telephone duties, she had other work to perform.[14]

The Fitting Room Associate job description describes the physical demands of the work, and notes that "[r]easonable accommodations may be made to enable individuals with disabilities to perform the essential job functions."[15]

Plaintiff's employee evaluations show that she was a satisfactory employee; she met Wal-Mart's expectations, but she generally did not exceed expectations or fail to meet expectations.[16] Plaintiff's evaluation for the period of October 31, 2000 through October 31,

---

guidelines; ensuring fitting rooms are neat and clean; following safety and emergency procedures; writing/securing prince information on signs near merchandise; using mark-up and mark-down instructions as needed; creating price labels and placing the labels on merchandise; scanning merchandise for customer's purchase or price verification; and straightening merchandise and cleaning merchandise area. With respect to customer service, Plaintiff was responsible for: practicing a 10 Foot Attitude; answering the phone; hanging up returned apparel merchandise; helping customers find what they need; providing proper/professional use of the radio pager; and assisting softlines associates with merchandise.

[13]Doc. No. 32.

[14]Doc. Nos. 34, 38.

[15]Doc. No. 32.

[16]Doc. Nos. 32, 39.

2001 showed that Plaintiff should be more punctual.[17] Plaintiff's October 31, 2002 to October 31, 2003 evaluation indicated that Plaintiff missed 10 days of work and was tardy 12 times, which was below Wal-Mart's expectations.[18]

### A. Plaintiff's Allegations of Discrimination

All of Plaintiff's allegations involve Ms. Cheryl Phillips, a Caucasian.[19] Plaintiff testified that she did not feel discriminated against by any other Wal-Mart employee.[20] Phillips, who was transferred to Store 241 in April, 2003, was Plaintiff's immediate supervisor and Assistant Manager over the clothing area.[21]

#### 1. *Telephone Duty*

Plaintiff alleges that Phillips discriminated against her by allowing another employee to answer the phones when Plaintiff was scheduled for phone duty.[22] After a three-to-four week absence from work, Plaintiff called to let Phillips know Plaintiff "was getting ready to come back."[23] On Plaintiff's first day back on the job, another employee was answering the phones.[24] Plaintiff testified that the other employee answered the phone "maybe a day or so," and then Plaintiff was again given phone duty.[25]

---

[17]Doc. No. 32.

[18]Doc. No. 39.

[19]Doc. No. 32.

[20]*Id.*

[21]*Id.*

[22]*Id.*

[23]*Id.*

[24]Doc. No. 32.

[25]*Id.*

2. *Verbal Reprimand For Arriving Late*

Plaintiff asserts that Phillips acted in a discriminatory manner by verbally reprimanding her for arriving at work at 8:00 a.m. when Plaintiff was scheduled to arrive at 7:00 a.m.[26] Plaintiff admitted in her deposition that she arrived at work late.[27] Plaintiff was not given a written reprimand for being tardy.[28] When Phillips learned that another employee, who was white, had arrived late, Phillips also verbally reprimanded that employee for being tardy.[29]

3. *The Stool*

Store Manager Tim Weeks, who transferred into Store 241 around April, 2003, told Phillips to move a stool that was standing near the dressing rooms because he did not want anyone sitting down while working on the floor.[30] Plaintiff alleges that Phillips allowed a white employee, Lois Blankenship, to sit on the stool, but that Plaintiff was not allowed to sit down.[31]

Blankenship suffered from vertigo, and on August 11, 2003, turned in medical documentation asking for an accommodation -- that she be allowed to sit while on duty.[32] Plaintiff suffers from diabetes, and must inject herself with insulin.[33] Plaintiff alleges that her medical condition was as well known as Blankenship's, but Plaintiff turned in a request for

---

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]Doc. No. 32.

[31]*Id.*

[32]*Id.*

[33]*Id.*

5

accommodation only on March 9, 2004.[34] Plaintiff testified that she was never disciplined for sitting on the stool, and that she was never told she could not have a break when she was not feeling well.

Plaintiff complained to Weeks about Phillips's alleged discriminatory behavior regarding the stool.[35] Weeks testified that Wal-Mart policy was that "only the person that was approved through the corporate guidelines could sit on the stool."[36] Weeks, and other managers, were aware that Plaintiff had diabetes, but did not know that Plaintiff had to give herself injections.[37] When Plaintiff complained to Weeks about not being allowed to sit on the stool, he told Plaintiff: "You need to get the proper documentation to me."[38]

### 4. *Extra Breaks*

Plaintiff alleges that she was discriminated against when Phillips gave her a written reprimand for taking longer breaks than allowed.[39] Plaintiff asserts that Blankenship was allowed to take longer breaks.

### 5. *Telephone Duty II*

Plaintiff also alleges that Phillips discriminated against her by allowing Blankenship to answer the phones when Plaintiff had been scheduled to work the phones.[40] Plaintiff testified that

---

[34]*Id.*

[35]Doc. No. 42.

[36]Doc. No. 39.

[37]*Id.*

[38]Doc. No. 42.

[39]Doc. No.32.

[40]*Id.*

6

she was sure this happened twice.[41] Plaintiff and Blankenship did not work the same shift. If Plaintiff saw Blankenship, it was generally when Plaintiff came in for the evening shift to relieve Blankenship from her morning shift.[42] However, Plaintiff testified that there were at least two occasions when Blankenship and Plaintiff worked together, and Blankenship was allowed to answer the phone while Plaintiff was assigned other duties.[43] Those duties appear to have been within her job description.[44] Plaintiff did not lose any hours because of the temporary reassignment.[45]

### 6. *Hostile Work Environment*

Plaintiff asserts that the conditions under which she worked constituted a hostile work environment.[46]

### 7. *Retaliation*

Weeks and another manager directed Phillips to give Plaintiff a Decision Day write-up for claiming pay for time not worked.[47] Plaintiff apparently took a meal break that was longer than what she wrote in her time adjustment.[48] There are video snapshots of Plaintiff leaving her

---

[41]*Id.*

[42]*Id.*

[43]*Id.*

[44]*Id.*

[45]Doc. No. 32.

[46]Doc. No. 1.

[47]Doc. No. 32. A Decision Day reprimand is the last level of discipline before termination.

[48]*Id.*

department at 8:27 p.m., and returning to her department at 9:37 p.m.[49] Plaintiff was absent for over an hour, but claimed pay based on a 45-minute meal break.[50]

One week after Plaintiff received her Decision Day reprimand, Wal-Mart terminated Plaintiff's employment, allegedly because of a workforce reduction brought about by the downturn in the economy.[51] Wal-Mart's policy is that employees with a Decision Day reprimand are the first tier of employees to be fired when the workforce is cut.[52]

Plaintiff asserts that Wal-Mart management knew at least a week in advance that the work force would be cut, and gave her the Decision Day reprimand to have an excuse to fire her.[53] Plaintiff alleges Wal-Mart terminated her employment in retaliation for her complaints about discrimination.[54]

Plaintiff brought suit against Defendant under multiple causes of action. This Court dismissed all of Plaintiff's claims except for her claim under the Arkansas Civil Rights Act ("ACRA").[55] Defendant filed its Motion for Summary Judgment in connection with Plaintiff's remaining cause of action.

## III. DISCUSSION

Allegations of race discrimination under the ACRA are analyzed in the same manner as Title VII claims.[56] When a plaintiff's claims of discrimination are based on indirect evidence, the

---

[49]*Id*. The write-up shows that Defendant returned to work at 9:34 p.m.

[50]*Id*.

[51]*Id*.

[52]*Id*.

[53]Doc. No. 32.

[54]*Id*.

[55]Doc. No. 13.

[56]*Henderson v. Simmons Foods, Inc*., 217 F.3d 612, 615 n.3 (8th Cir. 2000).

claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[57] Under the *McDonnell Douglas* framework, the plaintiff must first establish a *prima facie* case of discrimination.[58] Once the plaintiff meets this initial threshold, a presumption arises that the employer "unlawfully discriminated against the employee."[59] The burden of production then shifts to the employer, who must show some legitimate, nondiscriminatory reason for the employment decision.[60]

Within the *McDonnell Douglas* framework, the court is not required to assess the credibility of the defendant's explanation of its actions.[61] Once the defendant articulates a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[62] At all times in this analysis, the ultimate burden of production remains with the plaintiff,[63] and once the defendant has met its burden, the plaintiff must have "a fair opportunity to show that [the employer's] stated reason for [the employment decision] was in fact pretext,"[64] or that the proffered reasons for the employer's action were not true.[65]

---

[57] 411 U.S. 792 (1973).

[58] *Id.*

[59] *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[60] *McDonnell Douglas*, 411 U.S. at 802.

[61] *St. Mary's Honor*, 509 U.S. at 509.

[62] *Id.* at 507.

[63] *Id.*

[64] *McDonnell Douglas*, 411 U.S. at 804.

[65] *St. Mary's Honor*, 509 U.S. at 508.

**A. Disparate Treatment**

To establish a *prima facie* case of disparate treatment, a plaintiff must show that she: "(1) is a member of a protected group; (2) was meeting the legitimate expectations of the employer; [and] (3) suffered an adverse employment action; . . . (4) under circumstances permitting 'and inference of discrimination.'"[66] Adverse employment action is so critical to the disparate treatment claim that summary judgment is appropriate if the plaintiff fails to provide sufficient facts demonstrating that she suffered an adverse employment action.[67] "Not every setback amounts to an adverse employment action."[68] An adverse employment action is a "tangible change in duties or working conditions that constitute a *material employment disadvantage*"[69] or a "material change in the terms or conditions of her employment."[70] "'[N]ot everything that makes an employee unhappy is an actionable adverse action.'"[71]

As an African American, Plaintiff was part of a protected group.

    1. Telephone Duties and Warning for Arriving Late

Plaintiff's allegations in connection with telephone duty and the verbal reprimand for tardiness fail at the *prima facie* level because Plaintiff cannot show an adverse employment action. While Plaintiff's main job duty was to answer the phones, her job description included other tasks. It appears from the record that it happened only occasionally that Plaintiff was not

---

[66] *Clegg v. Ark. Dep't. Corr.*, 496 F.3d 922, 926 (8th Cir. 2007).

[67] *Baucom v. Holiday Cos.*, 428 F.3d 764, 768 (8th Cir. 2005).

[68] *Powell v. Yellow Book USA, Inc.*, 445 F.3d 1074 (8th Cir. 2006) (No adverse employment found where management gave Plaintiff three written reprimands, because Plaintiff could not point to a cut in pay, reduction in hours, or any other significant change to the conditions of employment.).

[69] *Burchett v. Target Corp.*, 340 F.3d 510, 518 (8th Cir. 2003) (emphasis added).

[70] *Ledergerber v. Strangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

[71] *Montandon v. Farmland Indus.*, 116 F.3d 355, 359 (8th Cir. 1997) (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)).

allowed to answer the phone when she had been scheduled to work the phones. Plaintiff was assigned other work during her shift. Neither Plaintiff's title, pay, nor benefits changed when she was assigned other duties. These occasional and temporary reassignments did not amount to an adverse employment action.

Plaintiff admitted in her deposition that she arrived at work an hour late once or twice while Ms. Phillips was her supervisor.[72] Phillips verbally warned Plaintiff that she should arrive at work on time; Plaintiff was not written up for her tardiness. A verbal warning to arrive at work on time is not an adverse employment action.

### 2. The Stool

Plaintiff cannot establish a *prima facie* case in connection with the stool, again, because Plaintiff cannot show an adverse employment action. Wal-Mart's policy was that no employee could sit on the stool without that employee having first been approved for an accommodation. Weeks and Ms. Phillips testified that they told Plaintiff that she needed to turn in the proper documentation if she wanted to be allowed to sit on the stool. Plaintiff submitted her request for accommodation on March 9, 2004 -- almost a year after Phillips was instructed by Weeks to remove the stool.

Plaintiff testified that she was never written up for using the stool. Further, during her deposition, Plaintiff was asked: "Did you ever ask to take a break because you weren't feeling well and be told by a Wal-Mart manager that you couldn't take a break for that reason?"[73] Plaintiff responded: "No."[74] The conditions of Plaintiffs employment did not materially change after she was not allowed to sit on the stool.

---

[72] Doc. No. 32.

[73] *Id*.

[74] *Id*.

3. <u>Longer Breaks</u>

Plaintiff was given a written reprimand on August 12, 2003, for taking more than a 15-minute break on both August 9, 2003, and August 11, 2003.[75] Plaintiff alleges Blankenship was allowed to take longer breaks. Plaintiff testified that when she complained to Phillips about the alleged disparate treatment, Phillips answered: "Well, you was on the clock" and "Well, you are not going to steal Wal-Mart time . . . ."[76] Plaintiff testified that she knew she was wrong for taking too long of a break.[77]

To succeed on her disparate treatment claim in connection with her August 12, 2003, written reprimand, Plaintiff must establish that Blankenship was similarly situated in all respects.[78] Plaintiff has not presented sufficient evidence that she and Blankenship were similarly situated.

Further, it is arguable whether Plaintiff suffered an adverse employment action based on the August 12, 2003, written reprimand. Plaintiff's employment was terminated allegedly because of a workforce reduction, and because she had a Decision Day reprimand. Under Wal-Mart's disciplinary policy, however, Plaintiff could have been given a Decision Day reprimand for claiming pay for time not worked even without the August 12, 2003, write-up.[79]

Even if Plaintiff could establish a *prima facie* case of discrimination in connection with the August 12, 2003, write-up, Defendant provided a legitimate, non-discriminatory reason for its actions: Plaintiff took, and admitted to taking, breaks longer than allowed. Wal-Mart's Break and Meal Policy reads: "Associates are to take full, timely, uninterrupted breaks and meal

---

[75]*Id.*

[76]*Id.*

[77]*Id.*

[78]*Smith v. Monsanto Chemical Co.*, 770 F.2d 719, 723 (8th Cir. 1985).

[79]See Doc. No. 32.

periods. Associates will be subject to disciplinary action for repeatedly failing to clock in or out for meal periods, missing breaks and/or meal periods, or taking breaks and/or meal periods that are too long or too short or untimely."[80] "Break periods are 15 uninterrupted minutes in length."[81]

Plaintiff's August 12, 2003, write-up shows that she took a 50-minute break on August 9, 2003, and a 25-minute break on August 11, 2003. Both times, Plaintiff was observed at the snack bar.

Plaintiff has not shown that Wal-Mart's reason for giving a written reprimand was a pretext for discrimination.

### 4. Pay Claimed For Time Not Worked

The March 22, 2004, Decision Day reprimand was for claiming pay for time not worked. Plaintiff's meal break was apparently longer than what she wrote in her time adjustment. There are video snapshots of Plaintiff leaving her department at 8:27 p.m., and returning to her department at 9:37 p.m.[82] Plaintiff was absent for over an hour, but claimed pay based on a 45-minute lunch break.[83]

There is no evidence of any other employee claiming pay for time not worked. Plaintiff's disparate treatment claim in regards to her March 22, 2004, reprimand thus cannot succeed.

Plaintiff cannot establish: (1) an adverse employment action in connection with telephone duties, the verbal reprimand, and using the stool; (2) pretext with respect to her August 12, 2003, written reprimand; or (3) disparate treatment in general with regard to her Decision Day reprimand. Accordingly, Defendant's Motion is granted on Plaintiff's disparate treatment cause of action.

---

[80]*Id*.

[81]*Id*.

[82]*Id*. The write-up shows that Defendant returned to work at 9:34 p.m.

[83]*Id*.

13

**B. Hostile Work Environment**

To make a *prmia facie* case of hostile work environment discrimination, a plaintiff must show that "(1) [s]he is a member of a protected group, (2) [s]he is subjected to unwelcome race-based harassment, (3) the harassment was because of his membership in the protected group, and (4) the harassment affected a term, condition, or privilege of his employment."[84] In determining if the alleged discrimination affected a term, condition, or privilege of a plaintiff's employment, the court looks at the totality of the circumstances, including "'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance.'"[85] "To clear the high threshold of actionable harm, [a plaintiff] has to show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult.'"[86]

Although Plaintiff is a member of a protected class, her allegations do not rise to the level of a hostile work environment. Plaintiff's allegations of discrimination focus on Phillips. It is undisputed that Phillips never used a racial slur, never told racial jokes, never made racial comments.[87] The hostile work environment, then, would be based on the disparate treatment alleged by Plaintiff. As discussed above, Plaintiff's disparate treatment claims cannot succeed.

Even if Phillips's alleged actions were discriminatory, they do not create a workplace that is "permeated with discriminatory intimidation, ridicule, and insult."[88] Further, to prove a

---

[84]*Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007) (citing *Singletary v. Mo. Dep't. of Corr.*, 423 F.3d 886, 892 (8th Cir. 2005)).

[85]*Mitchell v. City of Dumas*, 187 Fed. Appx. 666, 668 (8th Cir. 2006) (quoting *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 843 (8th Cir. 2002).

[86]*Duncan v. GMC*, 300 F.3d 928, 934 (8th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[87]Doc. No. 32.

[88]*Duncan*, 300 F.3d at 934.

racially hostile work environment, Plaintiff must show that the harassment "affected a term, condition, or privilege of his employment."[89] The alleged harassment, however, did not affect a term, condition, or privilege of Plaintiff's employment. Because Plaintiff cannot show a racially hostile work environment, Defendant's Motion is granted in connection with this claim.

### C. Retaliation

To establish a *prima facie* case of retaliation, a Plaintiff in a Title VII case must show each of the following elements: "(1) [s]he was engaged in statutorily protected activity, (2) [s]he suffered adverse employment action, and (3) a causal connection between the two exists."[90]

Plaintiff asserts that the proximity of her Decision Day reprimand to her being fired supports a conclusion that Defendant retaliated against her for alleging discrimination.[91] Plaintiff ties her Decision Day reprimand to the opening of the Supercenter, and asserts that Defendant knew that a reduction in workforce was coming because reductions were to be expected when a new store opened.[92] Thus, Plaintiff maintains that she was given a Decision Day reprimand after management was instructed to reduce the workforce so that she would be among the first employees fired.[93]

The Supercenter opened in January, 2004 -- about two months before Plaintiff was given her Decision Day reprimand. Weeks testified he was instructed to reduce the workforce a day before he began implementing the plan.[94] Ms. Ramona Johnson, a Co-Manager, testified that

---

[89]*Carpenter,* 481 F.3d 618.

[90]*Jackson v. St. Joseph Hospital*, 840 F.2d 1387, 1390 (8th Cir. 1988) (citing *Womack v. Munson*, 619 F.2d 1292, 1296 (8th Cir. 1980)).

[91]Doc. No. 41.

[92]*Id.*

[93]*Id.*

[94]Doc. No. 32.

Weeks told his management team about the reduction.[95] Plaintiff asserts, based on Johnson's statement, that Weeks knew about the plan before Plaintiff was given her Decision Day reprimand. Plaintiff contends that "Ms. Johnson even used the one week figure when describing how much lead time the store managers would get from head quarters to put together a workforce reduction."[96] While Plaintiff did not give a cite for Johnson's testimony, it appears to have come from Johnson's deposition, which reads in relevant part:

> Well, I mean -- it depends on what the company sends down. If they send down a week, you've got a week to get your payroll cut down to this limit and you've got a week to sit down and discuss where people are so you can look at records and see where people are so you'll know who you're going to let go.[97]

It does not seem that Johnson said that store managers would get one-week lead time to implement a workforce reduction.

Further, Weeks and another manager directed Phillips to give the reprimand. As Defendant pointed out in its Reply, it would have taken a conspiracy for the Decision Day reprimand to have been made in retaliation.[98] The record does not support Plaintiff's theory.

The facts must be viewed in the light most favorable to the non-moving party; however, allegations alone are not enough to survive a motion for summary judgment.[99] The evidence does not support a conclusion that Plaintiff's Decision Day reprimand was given in retaliation for her allegations of discrimination. Thus, Defendant's request for summary judgment in connection with retaliation is granted.

---

[95] Doc. No. 39.

[96] Doc. No. 41.

[97] Doc. No. 39.

[98] Doc. No. 45.

[99] *Lyons v. Potter*, 521 F.3d 981, 983 (8th Cir. 2008).

**IV.    CONCLUSION**

Defendant's Motion for Summary Judgment (Doc. No. 32) is GRANTED and this case is DISMISSED. All other pending motions are DENIED as MOOT.

IT IS SO ORDERED this 21st day of August, 2008.


/s/ Wm. R. Wilson, Jr._____
UNITED STATES DISTRICT JUDGE